**In the Interest of D.E.**

**No. 2–88–061–CV.**

Court of Appeals of Texas, Fort Worth.

Dec. 15, 1988.

Richard A. Gladstone, Fort Worth, for appellant.

Kimberly Campbell, Hurst, atty. ad litem for the child.

Tim Curry, Dist. Atty. and Loretta Stauffer, Asst. Dist. Atty., Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and FARRIS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

The Texas Department of Human Services (hereinafter called appellee) brought suit to terminate the parental rights of Connie Eddings as to her son, D.E. The case was tried to a jury, and following the jury's verdict on two special issues, the court entered the decree terminating the parental-child relationship between Connie Eddings and her son. Eddings appeals, raising three points of error. We affirm.

In her points of error number one and two, Eddings complains of the jury's findings on special issues number one and two. She argues that each of those issues, as found by the jury, was based upon either no evidence, or on insufficient evidence. In her point of error number three, Eddings complains that the procedure utilized by the trial court, in submitting the issues to the jury, denied her due process in the trial, and the court committed error in denying her motion for new trial based upon her due process claim. We will discuss her first two points of error together, as they address the sufficiency of the evidence as a whole.

The first special issue that the jury was required to answer, on the closing of the evidence, was whether or not appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered his physical or emotional well-being. Special issue number two inquired as to whether or not appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. The jury answered both of the special issues in the affirmative, and based upon these findings by the jury, the court entered its judgment terminating the parental rights and

relationship between the mother and the child.

The testimony at trial showed that Connie Eddings, appellant, is the mother of three children; the child subject of this suit was born November 14, 1985. Appellant has a nine-year-old daughter, and a six-year-old son as well. The evidence showed that appellant had lived with a man known as Tomas Garcia for nine years, beginning in April of 1976. During that period of time, she left Garcia and met Maclario Alvarado, who was the biological father of the child subject of this suit. She left Alvarado and returned to live with Garcia while she was pregnant with D.E.

Appellant told Garcia that he was the father, but he did not believe her, always referring to the child as "the little bastard." When the child was three-weeks-old, Garcia told her that the child would not be allowed in the house. Garcia rented a house for appellant and the child to live in. Other testimony showed, however, that appellant lived with Garcia most of the time, and that appellant was concerned because her boyfriend would not accept the child as his own.

Appellant also testified that as she could not bring the child into Garcia's house, she began leaving him with various individuals, even when he was sick. According to her, the child was always sick. She said he ran fevers once a week, and that his ears were running all the time. D.E. was hospitalized, in December of 1985, for pneumonia and an ear infection, and remained there for five days. Appellant was told by the physician to bring the child back in a week for follow-up examination but she did not return. The doctor testified at trial that, without appropriate treatment, pneumonia could lead to meningitis.

In March of 1986, the Department of Human Services received its first referral concerning the child. This was a call from a baby-sitter, Vanetta Meyers, who said that the child was congested, she did not have sufficient supplies to take care of him, and did not know how to contact the mother. Although appellant had told the baby-sitter where she worked, she had not left a

phone number where she could be reached. The DHS caseworker testified that when she went to Meyers' house in response to the referral, Meyers was with the child, who was crying a great deal and appeared to be severely congested. He wheezed and coughed quite often. The caseworker learned that Meyers did not have enough formula for the child. The caseworker recommended that the child be taken to the emergency room. Appellant took D.E. to the emergency room later that day. The doctor, testifying from hospital records, said that the child had an ear infection. The doctor further testified that without proper treatment such an infection could lead to pneumonia or meningitis. He recommended that appellant bring the child in for a required follow-up visit. Appellant again failed to take the child in, as she had in December, 1985.

A second referral was received by the Department of Human Services on the child in May of 1986. A different baby-sitter, Elsie Jacque, told the caseworker who responded that she did not have supplies to take care of D.E., and that she had had to feed him sugar water. Jacque also informed the caseworker she did not know where the mother was, and that appellant was supposed to pick the child up the previous day. The caseworker, at that time, removed the child from the baby-sitter's home. Appellant admitted that she had left only enough provisions for the child to last eight hours, and that she did not call Jacque, or check on the welfare of the child, for two days. Appellant further testified that Jacque was in her seventies, and was a stroke victim who required constant oxygen therapy.

The caseworker testified that the child was congested, and crying a great deal when she picked the child up. The next day, after the appellant contacted Jacque, appellant delayed from Saturday, May 10, until Monday, May 12, to contact the Department of Human Services to inquire about her child.

There was other testimony in the case that, because of Garcia's hostility towards D.E., appellant frequently left the child in the care of her aunt, Carol Benson. Benson's testimony was that D.E. lived with her off and on, that appellant did not always leave enough milk or diapers for the child, and that Benson had to provide these items. Benson also had custody of the older sister of the child, and had been taking care of her off and on for eight years. She testified appellant had kept the daughter with her for only about two or three years.

Appellee notes in its brief that although appellant contends there was either no evidence, or insufficient evidence, to support the jury's findings concerning appellant's knowingly placing or knowingly allowing the child to remain in conditions or surroundings which endanger the physical or emotion well-being of the child, or that appellant engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered his physical or emotional well-being, she did not dispute that the evidence was sufficient to support the jury's finding that the termination was in the best interest of the child. The State argues that, by failing to challenge that finding, it is a tacit admission by her that such evidence was sufficient. We agree with the State that the evidence is sufficient.

Section 15.02 of the Texas Family Code provides the basis on which parental rights may be terminated by the court:

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

. . . .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

In addition, the court further finds that:

(2) termination is in the best interest of the child.

TEX.FAM.CODE ANN. sec. 15.02 (Vernon 1986).

In order to terminate parental rights, the court must first find that the parent committed one of the enumerated acts in section 15.02(1) of the Family Code. Only then can the court determine what action is in the best interest of the child. *Richardson v. Green*, 677 S.W.2d 497, 499 (Tex. 1984).

■ The natural right existing between parents and their children is of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). The rights to conceive and raise one's own children have been deemed "essential," "basic civil rights of man," and "far more precious ... than property rights." *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

■ Termination of parental rights is a drastic remedy, and due process of law requires that the petitioner justify termination by "clear and convincing evidence." *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *Holick*, 685 S.W.2d at 20–21.

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak, or the evidence to the contrary is so overwhelming, that the finding should be set aside, and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

■ The evidence, in the present case, shows that the baby-sitter, Jacque, did not have any food to feed D.E., and further, she had to give him sugar water because she did not have any other food. There was other testimony, from appellant's aunt, that Jacque did not have any milk, diapers, or clean clothes to take care of D.E., and that Jacque had told the aunt that D.E. was sick, and that she did not know what to do.

D.E.'s physical well-being was endangered, not only by the lack of food, but by the lack of any parental care to provide any support or food for the child while he was with an aged baby-sitter. He was further physically endangered by the baby-sitter being physically incapable of attending to the needs of the child. Testimony was that Jacque, a woman in her seventies, was recovering from a stroke and required constant oxygen therapy. Although D.E. was sick, the sitter was ill herself. Upon showing up at the home of Jacque, the caseworker testified that it was necessary that the child be removed from her, and placed into immediate medical care.

As regards the referral from the baby-sitter Meyers, it appeared to the caseworker that Meyers was not capable of taking care of the child. Although Meyers was approximately twenty-years-old, the caseworker described her as being "slow." Although appellant had given Meyers the name of the business where she worked, Meyers did not know how to contact appellant because appellant had not given her a work number. At the time the child was with the baby-sitter, Meyers, there was not sufficient baby formula to take care of the child, nor did Meyers know how to medically care for the child who, at that time, required medical attention. There was no actual violence directed towards the child by any of the baby-sitters, but it is not necessary that there be any violence directed at the child, or that the child actually suffer injury. *Stuart v. Tarrant County Child Welfare Unit*, 677 S.W.2d 273, 279 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). We find the evidence sufficient to show that the appellant knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered his physical or emotional well-being, TEX.FAM.CODE ANN. sec. 15.02(1)(D), and we overrule her point of error number one.

In her second point of error, appellant complains that there was either no evidence, or only insufficient evidence, to support the jury's finding that she violated section 15.02(1)(E) of the Family Code, which provides:

A petition requesting termination ... may be granted if the court finds that:

(1) the parent has:

. . . . .

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

TEX.FAM.CODE ANN. sec. 15.02(1)(E).

Evidence indicating that the parent did not properly feed the child, or seek appropriate medical treatment for the child, has been held to be sufficient to support the jury's finding that the parent engaged in conduct which endangered the child's physical and emotional well-being. *In the Interest of S.H.A.*, 728 S.W.2d 73, 87 (Tex. App.—Dallas 1987, no writ).

■ We have reviewed the evidence in this case which shows that appellant had left her sick child with a baby-sitter in March of 1986, even though the child was congested, and appellant had testified that he was so congested the night before that he could hardly breathe. Notwithstanding this, appellant had given the baby-sitter insufficient information on where she could be reached in the event that the child was in danger. Further, she had not left sufficient food with the baby-sitter to take care of the child. In this connection, appellant only took the child to the emergency room and to a doctor after the caseworker had told her to do so. The doctor determined that the child had an ear infection and told appellant that, if this condition were not treated, it could lead to pneumonia or meningitis. The doctor scheduled a follow-up visit for the child, but appellant never took the child for the follow-up visit.

The doctor testified that appellant had previously failed to bring the child in for a required follow-up visit, when the child had been ill with pneumonia the previous year, in December of 1985. The child had been hospitalized at that time for five days, and the doctor testified that if pneumonia were not appropriately treated it could lead to meningitis. It is clear from this that appellant knew on several occasions that her child had been ill, and had required medical attention, and further knew that this condition had subsisted for some period of time and had not been cured, nor had any medical treatment been effective to cure the child's chronic condition. Notwithstanding the chronic illness of the child, appellant, nevertheless, continued to leave the child with different baby-sitters, and ultimately left the child with an elderly baby-sitter for more than two days without medicine, without sufficient food, and without clothing. The elderly baby-sitter testified she had to give the child sugar water because she did not have any other food, nor even diapers, nor clean clothes. Referral by that baby-sitter had been to an aunt, whose husband then referred it to the Department of Human Services. It is abundantly clear in this case that there is sufficient proof that the appellant engaged in conduct, or knowingly placed the child with persons who engaged in conduct, which endangered the physical or emotional well-being of the child. It is inconceivable that appellant now argues on appeal that her acts were not of a sufficient degree as to endanger her child's physical well-being. We find the evidence to be sufficient, and overrule appellant's second point of error.

■ In her third point of error, appellant raises a novel contention. She argues that the statute concerning involuntary termination of parental rights, which requires that before a right is terminated the State must establish one or more acts listed in 15.02(1) of the Family Code *and* must also prove the termination is in the child's best interest, should not be considered as requiring a one-step hearing. She contends, rather, that the question of whether termination is in the child's best interest should be delayed, and only considered after the jury has found that one or more of the enumerated acts or omissions were proved by clear and convincing evidence. She argues that the trial should be the same as in

a criminal case, where the court must bifurcate the trial into two parts: guilt or innocence; and then have the jury consider evidence on punishment. Appellant argues this two-stage process should be applied to civil trials of termination of parental rights. She argues that the case was tried on the evidence of "best interest alone," and that this evidence (for termination considerations) "spilled over" and influenced the jury in making an impartial determination of whether the alleged acts or omissions were sufficiently proved themselves.

Appellant argues that the only method that could adequately protect her rights is a bifurcation of the trial into a fact finding hearing under section 15.02(1)(A–K), and then a separate hearing regarding the best interest issue. She cites us to a procedural safeguard built into other states' termination statutes to remedy just such a problem; in particular, the NEW YORK FAM. CT.ACT. sec. 622, 623. In support of this, she cites us to a Texas criminal case and makes an analogy that the appellant/mother should have a corresponding right to be tried on a specific accusation under section 15.02 of the Family Code, and not tried for being a less than perfect parent, to the proposition that defendant is entitled to be tried on the accusation in the State's pleadings, and not for the collateral crime of being a criminal generally. *See Jones v. State,* 587 S.W.2d 115 (Tex.Crim.App. [Panel Op.] 1979). We disagree with appellant's contentions.

We find no authority which requires such a bifurcated proceeding in a civil matter. We further note that the findings required under both subparagraph 1 and subparagraph 2 of the statute must be by clear and convincing evidence. *See Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984); *see also In the Interest of G.M.,* 596 S.W.2d at 846. That the evidence overlaps into each element which must necessarily be proven is clear to us. The evidence under section 15.02(1) is relevant to what is in the best interest of the child, which is the issue to be determined in regards to the termination question section 15.02(2). We view the two separate subparagraphs as elements of a relationship potentially distructive to the child which must be proven before parental rights may be terminated. Justice Pope made the following observation in a case in which the supreme court held the evidence was not sufficient for termination:

> Involuntary termination of parental rights rests upon Section 15.02. Subdivision (1) of that Section lists several acts or omissions, one or more of which must be proved in a termination case. The list may not be an exclusive one, but so far as this case is concerned, the Welfare Unit relied only upon Section 15.02(1)(E). Subdivision (2) of the same Section requires proof of a second element, that the termination is in the best interest of the child. Both elements must be established and the requirements of Subdivision (1) are not excused because a court may be of the opinion that Subdivision (2) has been proved.

*Wiley v. Spratlan,* 543 S.W.2d 349, 351 (Tex.1976).

In many cases the facts showing a violation under subsection 1 will be the same facts which show that termination is in the best interest of the child under subsection 2. *See In the Interest of Guillory,* 618 S.W.2d 948, 950–51 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). Here the jury returned its verdict upon two separate sections of 15.02(1), and the court entered its judgment of termination under 15.02(2). There are no binding precedents discussed by appellant, and we know of none, which would require the procedure she has suggested in this case. Point of error number three is overruled.

THE JUDGMENT IS AFFIRMED.