COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-08-162-CV

 

 

IN THE
INTEREST OF K.W. AND B.Y., 

CHILDREN

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Introduction








Appellant Dusty C. appeals from the trial court=s
judgment terminating her parental rights to her minor children, K.W. and
B.Y.  Appellant argues two issues:  (1) the court erred by finding additional
grounds for termination after accepting her voluntary affidavits of
relinquishment, and (2) there is insufficient evidence to support the finding
that the termination was in the children=s best
interest  We affirm.

Factual and Procedural Background 

Appellant has two children, K.W. and B.Y.  K.W. was born on March 2, 1998, and B.Y. was
born on January 26, 1999.  Jeannie Maxey
of the Texas Department of Family and Protective Services (Athe
Department@) received a referral of
neglectful supervision and physical abuse of the children.  The referral contained allegations that
Appellant was living with a girlfriend, Ms. Patterson, whom Appellant allowed
to discipline the children, leading to reports that the children received
bruises from spankings.  Patterson has
multiple personality disorder and exhibits nine different personalities.  There were concerns about those personalities= effect
on the children, who have mental disorders as well.  Patterson also has a personal history of
sexual abuse, and both Appellant and Maxey were concerned about Patterson being
around the children and possibly acting out sexually.








In an April 2, 2007 interview with Maxey,
Appellant admitted that she thought about giving up her children at their
births and that she presently thought about giving them to someone else.  She mentioned that K.W. was having violent
outbursts.  At that time, K.W. was living
with one of Appellant=s friends.  On May 21, the Department received another
referral containing an allegation of physical abuse of B.Y. by his maternal
grandfather.  Also in May 2007, K.W. was
admitted to a mental health hospital, and B.Y. was admitted shortly thereafter.

On May 29, 2007, Appellant turned over custody of
her children to the Department and stated she could no longer care for
them.  Because the children were in
mental health hospitals at that time, they were not physically taken into the
Department=s care.  The Department filed its petition for
protection of the children, for conservatorship, and for termination on May 31,
2007, with counsel appointed to represent Appellant all on the same date.  The Department was named temporary managing
conservator on June 8, 2007.

On June 21, 2007, Appellant met with Department
caseworker Katrina Mack to discuss her options, including relinquishing her
parental rights.  Mack conversed with
Appellant and provided her with a conservatorship family service plan.  Mack offered Appellant services including
parenting classes, individual counseling, family counseling; the plan also
required housing and random drug testing. 
Mack testified that Appellant told her that she did not want to perform
the services and wanted to relinquish her parental rights.  Mack confirmed at trial that Appellant signed
the service plan and stated in the parent=s
comment section, AI would like to relinquish my
parental rights.@








On July 2, 2007, Appellant and her attorney met
with Mack and an attorney ad litem and signed affidavits of relinquishment of
parental rights for K.W. and B.Y.  Mack
testified that Appellant signed the documents with her attorney in the room and
indicated to Mack that she signed them voluntarily.

At the termination trial on April 8, 2008,
Appellant requested that the court invalidate her relinquishments.  Despite this assertion, Appellant testified
that she signed the relinquishments voluntarily.  She stated that she was willing to take
classes to learn to deal with the children=s
disorders; earlier in the trial, she had discussed some of the children=s
behavioral issues, including a poignant incident when she woke up to K.W.=s hands
around her throat and K.W. saying that she Awanted
to kill [her].@ 
At the time of the hearing, Appellant had not completed any services
suggested by the Department.

Appellant testified that she tried to contact
Mack several times about seeing her children during the months before the trial
but that Mack did not answer her phone or return the calls.  When asked if she had made arrangements for
both K.W. and B.Y.=s psychological counseling, in
the event the court granted her custody, Appellant stated she had not.








After the bench trial, the trial court granted
the Department=s petition for termination.  The trial court found that Appellant executed
before the suit an unrevoked or irrevocable affidavit of relinquishment of
parental rights as provided by Chapter 161 of the Texas Family Code; knowingly
placed or knowingly allowed the children to remain in conditions or
surroundings which endangered the physical well-being of the children; engaged
in conduct or knowingly placed the children with persons who engaged in conduct
which endangers the physical or emotional well-being of the children; and
constructively abandoned the children.  See
Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (K),
(N) (Vernon Supp. 2008).  The trial court
further found that termination was in the children=s best
interest.  Id. '
161.001(2).  The trial court terminated
Appellant=s parental rights and appointed
the Department as K.W. and B.Y.=s
permanent managing conservator.[2]  Appellant filed a motion for new trial and
statement of points on appeal.  The trial
court denied the motion for new trial and found that an appeal would not be
frivolous.








Standard of Review

A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).  In a termination case, the State
seeks not just to limit parental rights but to end them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick, 685 S.W.2d at
20B21; In
re E.M.N., 221 S.W.3d 815, 820 (Tex. App.CFort
Worth 2007, no pet.).








In proceedings to terminate the parent-child
relationship brought under section 161.001 of the family code, the petitioner
must establish at least one ground listed under subdivision (1) of the statute
and must also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. ' 161.001(1),
(2); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as determined
by the trier of fact.  Tex. Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic
remedy and is of such weight and gravity that due process requires the petitioner
to justify termination by clear and convincing evidence.  Tex. Fam. Code Ann. ''
161.001, 161.206(a);  In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002).  This
intermediate standard falls between the preponderance standard of ordinary
civil proceedings and the reasonable doubt standard of criminal
proceedings.  In re G.M., 596
S.W.2d 846, 847 (Tex. 1980);  In re
C.S., 208 S.W.3d 77, 83 (Tex. App.CFort
Worth 2006, pet. denied).  It is defined
as the Ameasure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@ 
Tex. Fam. Code Ann. ' 101.007
(Vernon 2009).








The State=s Affidavits of
Relinquishment

and Alternate Statutory
Grounds

 

In her first issue,  Appellant argues the trial court should have
based the termination on her relinquishment affidavits or on alternate
statutory grounds, but not both.  Appellant
argues that the trial court caused harm to her by allowing the State to bring
forth additional statutory grounds after proving that Appellant signed a
voluntary relinquishment affidavit.[3]








Under section 161.001 of the Texas Family Code, a
trial court can authorize a termination based on proof the parent committed any
one of the prohibited acts in subdivision (1) and proof that termination of
parental rights is in the child=s best
interest.  Tex. Fam. Code Ann. '
161.001(1)B(2); In re J.L., 163
S.W.3d at 84.  The statute does not
require the Department to elect between proceeding on the basis of voluntary
relinquishment or proceeding on one of the other grounds listed in subdivision
(1) of section 161.001.  Tex. Fam. Code
Ann. '
161.001(1).  Also, there is no
requirement in the statute and no case that holds that the trial court must,
should, or may bifurcate the termination hearing procedure by first finding no
valid voluntary affidavit of relinquishment before considering other statutory
grounds for termination.  See In re
D.E., 761 S.W.2d 596, 600B01 (Tex.
App.CFort
Worth 1988, no writ.) (holding that no precedent existed to allow the final
termination hearing to be bifurcated between the alleged ground of termination
and the best interest of the child analysis). 
Moreover, Appellant cannot completely remove evidence from the trial
court=s
consideration as facts used in the best interest analysis often overlap with
the statutory grounds; thus, evidence of endangering conduct and other
predicate acts tend to emerge during the best interest analysis, regardless of
the subdivision (1) grounds initially relied upon.  See In re S.K.A., 236 S.W.3d 875, 903
(Tex. App.CTexarkana 2007, pet. denied); In
re C.E.K., 214 S.W.3d 492, 503 (Tex. App.CDallas
2006, no pet.) (stating that in some cases, the best interest of the child is
infused with the statutory offensive behavior).








Appellant has cited no law to support the policy
argument that the Department=s proof
of voluntary relinquishment ground should negate the trial court=s
ability to review the Department=s
additional grounds for termination before its subsequent best interest
analysis.  If the trial courts allowed
this two-part inquiry, many parents who committed acts covered by other
statutory grounds, such as endangerment, could avoid the repercussions of
section 161.001(1)(D) and (E) by simply signing an affidavit of relinquishment
before their termination hearing.[4]  That policy has yet to be accepted by any
Texas court.  We overrule Appellant=s first
issue.

Legal and Factual Sufficiency: Best Interests of
the Children

In her second issue, Appellant argues there was
insufficient evidence to support the finding that the termination was in the
children=s best
interest.








In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment.  Id.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could, and disregard contrary evidence unless a
reasonable factfinder could not.  Id.

We must therefore consider all of the evidence,
not just that which favors the verdict.  Id.  But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the factfinder=s province.  Id. at 573B74.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s
determinations as long as they are not unreasonable.  Id. at 573.

In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the termination of the parent-child relationship would be in the
best interest of the child.  C.H.,
89 S.W.3d at 28.  If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction in the truth of its
finding, then the evidence is factually insufficient.  H.R.M., 209 S.W.3d at 108.








Prompt and permanent placement of the child in a
safe environment is presumed to be in the child=s best
interest.  Tex. Fam. Code Ann. '
263.307(a) (Vernon 2002).  There is also
a strong presumption that keeping a child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(1)    the
desires of the child;

 

(2)    the
emotional and physical needs of the child now and in the future;

 

(3)    the
emotional and physical danger to the child now and in the future;

 

(4)    the
parental abilities of the individuals seeking custody;

 

(5)    the
programs available to assist these individuals to promote the best interest of
the child;

 

(6)    the
plans for the child by these individuals or by the agency seeking custody;

 

(7)    the
stability of the home or proposed placement;

 

(8)    the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and

 

(9)    any
excuse for the acts or omissions of the parent.

 

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).








These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.  In addition to the Holley factors, the
factfinder may also consider: a parent=s
inability to provide adequate care for the child, lack of parenting skills,
poor judgment, and repeated instances of immoral conduct  when looking at the child=s best
interest.  In re C.A.J., 122
S.W.3d 888, 893 (Tex. App.CFort
Worth 2003, no pet.).  We now address
those factors for which relevant evidence was admitted; some factors are
combined due to overlapping evidence.

1.     The emotional and physical needs of K.W. and B.Y. now and in the
     future, the plans for K.W. and B.Y.
by the Department, and the stability       of
their proposed placement

 

The evidence submitted at trial indicates that
K.W. and B.Y. both have significant emotional needs and behavioral issues that
Appellant did not appear prepared to handle at the time of the hearing.  For instance, Mack testified that both of the
children have post-traumatic stress disorder, bipolar tendencies, and
attention-deficit hyperactivity disorder (AADHD@).  Additionally, she stated that K.W. has a
severe case of attachment disorder.








Regarding behavioral issues, Appellant testified
that both her children exhibit violent behaviors.  She elaborated by recalling an incident where
K.W. banged her head against a bathroom door, causing a mirror to crash into
B.Y., and another incident where K.W. choked Appellant while telling her that
she wanted to kill her.

Despite her testimony regarding the children=s
substantial emotional needs and her inability to handle their behavior, at the
time of trial Appellant had not made any arrangements for psychological help,
counseling, or other services. 
Additionally, even though Appellant testified that she attended three or
four parenting classes, she admitted that she did not complete the classes or
any other parts of her service plan. 
Appellant did testify that she was willing to take classes to learn about
her children=s disorders; however, at the
time of trial, she had not taken advantage of any services that had been
offered to her.








By contrast, Mack testified that the Department=s
placement of K.W. and B.Y. at the time of trial provided the stability they
needed to make progress with their behavioral and emotional needs.  At the time of trial, K.W. was in a
therapeutic foster home that was adoption-motivated.  Although K.W. struggled academically because
of her ADHD and other behavioral problems, she received assistance through a
modified setting and schedule at school. 
B.Y. also received assistance for his behavioral issues and emotional
needs through a residential treatment facility. 
Mack testified that he was showing signs of progress through his
placement.  Finally, Mack testified that
both K.W. and B.Y. were adoptable and that the Department=s
primary motivation was to keep the children together.

2.     The present and future
potential emotional and physical danger to K.W.         and B.Y.

Evidence at trial showed that Appellant has a
history of using methamphetamine in the presence of K.W. and B.Y., an act that
placed the children in a dangerous environment. 
See In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort
Worth 2003, no pet.) (stating that parental illegal drug use supports the
conclusion that the children=s
surroundings endanger their physical and emotional well-being).  Despite Appellant=s
bipolar diagnosis, she did not take medication and had not sought treatment
from a mental health expert.  This
evidence also tended to show a potential emotional and physical danger to the
children.  See In re K.A.S., 131
S.W.3d 215, 226 (Tex. App.CFort
Worth 2004, pet. denied) (discussing the emotional and physical danger of the
mother=s
noncompliance in taking medications for her bipolar disorder).








Mack also testified about Patterson=s
presence as another potential danger to the children, due to her personality
disorder and history of sexual abuse.  At
the time of trial, Appellant had only been employed for three weeks and was
still living with and dependent on Patterson. 
See In re D.S., 176 S.W.3d 873, 879 (Tex. App.CFort
Worth 2005, no pet.) (holding that evidence of a parent=s
unstable lifestyle, including drug use and inability to provide a stable home,
can support a factfinder=s conclusion that termination is
in the child=s best interest), superseded
by statute on other grounds as recognized in In re D.A.R., 201 S.W.3d 229,
230B31 (Tex.
App.CFort
Worth 2005, no pet.).

3.     Parental abilities and the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one

The evidence at trial indicated that Appellant
lacked significant parental abilities and that the relationship was not proper
between Appellant and her two children. 
During an earlier investigation, Appellant told Maxey that she had
thought about giving up both children for adoption when they were born.  Appellant had a history of Department investigations.

Appellant voluntarily turned over custody of K.W.
and B.Y. to the Department on May 30, 2007. 
Appellant then voluntarily executed irrevocable affidavits of
relinquishment of parental rights on July 2, 2007.  During the period between turning over
custody in May 2007 to the time of trial in April 2008, Appellant did not
contact anyone at the Department or inform them that she had changed her mind.








At trial, Appellant testified that she
voluntarily signed two affidavits of relinquishment of parental rights with the
assistance of counsel.  She stated that
during the meeting Appellant=s
attorney explained the documents she would be signing and the rights she would
be giving up as a result.  Appellant
stated at trial that she not only understood the rights she was giving up but
also that the documents she was signing were both irrevocable and
permanent.  In fact, at trial, Appellant
herself stated that she thought relinquishing her parental rights was Ain the
best interest@ of K.W. and B.Y. when she
signed the affidavits of relinquishment.

Evidence also shows that after signing the
affidavits of relinquishment, Appellant had only seen K.W. and B.Y. on one
occasion, a goodbye meeting that took place in July 2007.  She had sent correspondence to the children
and contacted the Department on three occasions to ensure the cards reached
K.W. and B.Y.  According to Mack,
Appellant never contacted the Department to request a visit with the
children.  Mack testified that the first
time she heard that Appellant had expressed second thoughts about relinquishing
her parental rights was at the termination trial in April 2008.








At trial, Mack testified that Appellant had not
provided K.W. and B.Y. with a stable environment.  Mack stated that the Appellant moved the
children around a lot and assigned several of her numerous partners the job of
disciplining the children.  One of
Appellant=s partners physically abused the
children, causing bruising.  And the
Department ruled that there was Areason
to believe@ Appellant was not protective of
her children after she allowed her current partner, Patterson, to discipline
K.W. and B.Y. by spanking them, bruising them, and leaving marks on them.  The Department also found Areason
to believe@ in the case alleging abuse of
B.Y. by his maternal grandfather during a visit in 2006.  Ample evidence supported the conclusions that
Appellant lacks parental abilities and Appellant=s acts
and omissions indicated her relationship with K.W. and B.Y. was not a proper
relationship.

4.     Excuses for the acts or
omissions of Appellant

Appellant admitted that she knowingly and
voluntarily signed irrevocable affidavits relinquishing her parental rights,
but she testified that she wanted her children back.  She testified she would take classes to learn
to deal with their disorders and that she had been reading about the children=s
diagnoses.  Despite this assertion,
Appellant failed to complete any of the services provided for her by the
Department up to the time of trial. 
Appellant testified that she tried to call the Department to schedule
visitation with K.W. and B.Y. but she could not remember the dates she tried to
call and did not leave messages each time she called.








Considering all the evidence relevant to the Holley
factors, we hold that a factfinder could reasonably have formed a firm belief
or conviction that termination of Appellant=s
parental rights as to K.W. and B.Y. is in their best interest.  Accordingly, we hold that the evidence was
legally sufficient.  We also hold, based
on the entire record, that the evidence was factually sufficient to support the
trial court=s best interest finding.  Thus, we overrule Appellant=s second
issue.

Conclusion

Having overruled both of Appellant=s
issues, we affirm the trial court=s
termination order.

 

ANNE
GARDNER

JUSTICE

 

 

PANEL:  DAUPHINOT and GARDNER, JJ.; and DIXON W.
HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  February 19, 2009











[1]See Tex. R. App. P. 47.4.





[2]At the close of the case,
the Department requested that B.Y.=s father=s rights be terminated for constructive
abandonment under section 161.001(1)(N) of the family code because he did not
file an answer or appear.  Since K.W.=s father was considered
unknown until Appellant admitted it could be one of two men, the court
permitted the Department to terminate the rights of the unknown father with the
knowledge that the Department could file a new petition at a later time.





[3]The State first argues
that Appellant waived this issue, but she preserved error by listing this
ground in her motion for new trial.  See
Tex. R. App. P. 33.1(a); In re L.M.I., 119 S.W.3d 707, 710B12 (Tex. 2003) (holding
appellant failed to preserve error when the issue with the relinquishment
affidavits was not raised in any post-judgment motion), cert. denied,
541 U.S. 1043, 124 S. Ct. 2175 (2004).





[4]Under section
161.001(1)(M), a court may order termination if a parent has Ahad his or her
parent-child relationship terminated with respect to another child based on a
finding that the parent=s conduct was in
violation of Paragraph (D) or (E) or substantially equivalent provisions of the
law of another state.@  Tex. Fam. Code Ann. ' 161.001(1)(M).  Because of ground (M) of the statute, the
parent could lose parental rights to another child based on previous
terminations based on (D) or (E).  See
id.