# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00450-CV

**A.K., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 265,217-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant A.K. appeals from the trial court's decree terminating her parental rights to her twin daughters, J.G. and E.G., who were four years old at the time of the hearing. We affirm the trial court's decree of termination.

### Factual and Procedural Background

On July 29, 2013, the Texas Department of Family and Protective Services obtained temporary conservatorship of the children, based on an affidavit by a Department caseworker who averred that on July 25, while she and her boyfriend moved their belongings from Copperas Cove to Houston, A.K. left her then-three-year-old twins with a friend of two months named Jessica. A.K. did not give Jessica diapers, clothing, food, or money for the girls' care but said she would bring them to her the next morning. Jessica told the Department that when A.K. did not bring the supplies as promised, she attempted to phone A.K., finally reaching her in the afternoon. A.K. said she was

already in Houston and would not be back for several days, so Jessica called the Department and explained that she had no supplies and no money with which to care for the children. The caseworker contacted A.K., telling her that she had to return to get the girls, and A.K. replied that "she would return to the area in a couple of days." When she was told she had to return immediately or provide the name of a local caretaker, A.K. said she "would call later." The caseworker said A.K. was incoherent and seemed "to be under the influence" during the conversation. The caseworker went to see the children and observed that they were not verbal, that they both had diaper rashes and bruises on their legs, and that J.G. had scratches on her face.

The affiant caseworker stated that the children's father was serving a thirty-month sentence in Tennessee for abusing J.G.[1] and that A.K. had been referred to the Tennessee Child Services Department twice—for the abuse to J.G. that led to the children's father's incarceration and for an alleged lack of supervision, a case that was closed without services. A.K. also had two prior cases in Texas—a June 2012 neglectful-supervision allegation that was ruled out and an October 2012 physical-neglect allegation that was still open following an investigation that found that the home was filthy, the children were dirty and appeared to be developmentally delayed, there was no food in the house, and A.K. lacked parenting and housekeeping skills.

In October 2013, following a status review hearing, the trial court signed an order requiring A.K. to comply with a Family Service Plan (FSP). Under the FSP, A.K. was required to: (1) take random drug tests; (2) participate in supervised visitation; (3) complete anger management

---

[1] The children's father had abused J.G. to the point that she suffered bleeding on the brain and behind her eyes. His parental rights were also terminated, but he is not a party to this appeal.

and parenting classes and provide the Department with certificates of completion; (3) attend individual counseling; and (4) complete a psychological evaluation. The Department's last progress report, filed about one month before trial, stated that A.K. had not completed a psychological evaluation; had not begun therapy; did not take a drug test as requested five months earlier; was not employed; was living in Houston with her boyfriend but a Department caseworker "has yet to be able to view the home"; had not sent any clothing or other items to the children; had not begun parenting classes; and did not show up for an initial meeting to review the FSP.[2]

Monica Salazar, the Department caseworker who took over the case about three months before trial, testified to the same basic facts presented in the original affidavit: when A.K. moved to Houston, she did not have room to take the children, so she left them with her friend, promising she would bring provisions. When the friend contacted A.K. the next day, A.K. said she was already in Houston and would not return for several days. The friend then called the Department, who took the children into custody, and A.K. never returned to the area.

Salazar said A.K. never completed any of the FSP requirements, despite being informed about them and being told that it was her responsibility to set up services and to allow the Department to check her employment and inspect her home. Salazar also testified that A.K. had not visited the children in at least nine months,[3] that Salazar had only heard from A.K. "a couple of times by phone," and that the Houston-area caseworker assigned to assist A.K. had reported that she "could not contact [A.K.], and then a lot of times they would play phone tag."

---

[2] The trial court stated at trial that it would take "judicial notice of all documents" in its file.

[3] Salazar was asked whether she knew that A.K. had "some visitation" "in the past," and she said that the previous caseworker might have arranged for such visitation but that the children had been placed in a foster home in Dallas several months before she was even assigned to the case.

3

Salazar said A.K. contacted her at one point to set up a psychological evaluation, but the form the Department uses to pay for such examinations had expired and needed to be renewed. The Houston caseworker told Salazar she had already sent two of those forms to A.K., so Salazar issued a third, explaining to A.K. that she had a limited amount of time to set up an appointment. Salazar never received a report, so she assumed A.K. either never set up or did not attend the evaluation appointment. Similarly, Salazar never got any report or other indication that A.K. had taken a parenting class or any drug tests, which resulted in deemed-positive tests.

Salazar testified that the children had been placed with a foster family in the Dallas area, and that the foster parents were poised to adopt them if the girls' parents' rights were terminated. The children are doing well in their foster home, and Salazar believed it was in their best interest for A.K.'s parental rights to be terminated because A.K. has not shown she can care for the children, has not shown stability in her home or employment, and "basically has abandoned the children, hasn't seen them, hasn't really asked about them whenever we do talk."

The children's guardian ad litem, Cathy Rothas, provided a verbal report, stating that she had also had difficulty contacting A.K., who said in December 2013 that she would work her services. When the children came into care, Rothas said, "they were nonverbal, they would bite and scratch and pull each other's hair." Since being placed in their foster home, they had started talking, were biting less, and could be placed with other children without raising concerns that the other children might be hurt. Rothas said, "I absolutely believe it's in the best interest to terminate the parental rights of—so these children can be adopted by their current home."

4

A.K. testified that she was not employed, although she was able to work, and that she had applied for jobs "but not in the past few months." She received $600 a month in disability benefits due to post-traumatic stress disorder and lived with her boyfriend, who was employed, and said she had moved to Houston to "make a better situation" for the children. A.K. testified that she gave Jessica a box of diapers and did not know why Jessica lied to the Department about it. She denied telling Jessica that it would be several days before she returned and testified that she instead had told Jessica it would be several hours because it was a three-hour drive. When she learned the Department had already taken custody of the children, she decided not to return.

A.K. testified that she never had an appointment for a psychological exam because she called the doctor's office "numerous times" and was always told that the doctor was "waiting on the paperwork from the caseworker" and that they would call her. A.K. also said she was never told to take a drug test but received one call saying she had missed a test. She "looked into" parenting classes but never attended because "I just felt like I had odds against me." A.K. said she never sent the girls cards, birthday gifts, or other items because she did not know that she was allowed to but conceded she had never asked if she could. When she was asked why she had not complied with the FSP, she said, "I felt like it was the lack of communication with the [case]worker in Houston," but she also said she called Salazar when she had problems reaching the Houston caseworker. A.K. admitted that the children probably would not recognize her because she had not seen them in nine months, but she testified that she was "willing to do anything and everything" to regain custody, including relocating back from Houston to work with Salazar.

5

The trial court determined that termination was in the children's best interest and that A.K. (1) had constructively abandoned the children for at least six months, had not visited or maintained contact with them, and had demonstrated an inability to provide them with a safe environment; and (2) had failed to comply with the court order that established the actions necessary to regain custody following the girls' removal for neglect. *See* Tex. Fam. Code § 161.001(1)(N), (O), (2). A.K. appeals, arguing that the evidence is legally and factually insufficient to support either ground for termination or a finding that termination is in the children's best interest.[4]

**Discussion**

A.K. first argues that the evidence is legally and factually insufficient to support a finding of constructive abandonment because there was insufficient evidence to show that she had failed to maintain significant contact with the children or that she lacked the ability to provide them with a safe environment. *See id.* § 161.001(1)(N) (termination may be ordered if parent constructively abandons child in Department's care for at least six months, Department has made reasonable efforts to return child, parent has not regularly visited or maintained significant contact with child, and parent has demonstrated inability to provide safe environment); *see also In re A.Q.W.*, 395 S.W.3d 285, 289-90 (Tex. App.—San Antonio 2013, no pet.) (implementation of FSP is considered reasonable effort to return child if parent is given reasonable opportunity to comply with plan).

---

[4] For the well-established standards applied in reviewing the sufficiency of the evidence in a termination case, *see* Tex. Fam. Code §§ 101.007 (defining clear and convincing evidence), 161.001 (grounds for termination); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (defer to fact-finder's reasonable credibility decisions); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (review of evidence); *In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002) (review of evidence).

A.K. emphasizes that Salazar was generally unfamiliar with the case, noting that she was "unaware" that A.K. was not required to pay child support and did not use the names of the Houston and Dallas-area caseworkers. A.K. goes so far as to assert that the evidence "showed that it was the Department preventing [A.K.] from having access to her children and not a lack of effort on [A.K.'s] part to stay in contact with her children." However, Salazar's testimony was that A.K. had not visited with the girls in the nine months since their removal, had never sent cards or gifts, and "hasn't really asked about them" during the three months Salazar had been assigned to the case. A.K. herself admitted that she had not sent anything to the children and that the girls probably would not recognize her because they had not seen her in nine months. Although there may have been communication problems with her Houston caseworker, A.K. knew she could contact Salazar for help and did so on several occasions, for instance, obtaining a third order for a psychological exam, but then never followed through after obtaining Salazar's assistance. The evidence is sufficient to show that A.K. failed to maintain significant contact with the children. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (appellate court must defer to fact-finder's reasonable credibility decisions).

As for the safety of the environment A.K. could provide, there was evidence that: A.K. left the children with Jessica without providing supplies for their care; Jessica lacked the means to provide for the children herself; A.K. was incoherent and seemed to be "under the influence" when contacted by a caseworker at the time of the children's removal; the children were nonverbal and showed signs of developmental delays when they were removed; A.K. did not take a parenting or anger management class as required; she was deemed to have had positive drug test results because she never took the required tests; she had not found employment; and the Department was

7

never able to inspect her home. The trial court, having placed the FSP requirements on A.K. in order to protect the children, could have formed a firm belief or conviction that A.K. had demonstrated an inability to provide the girls with a safe environment. *See In re B.C.*, No. 07-13-00078-CV, 2013 WL 4624618, at *3 (Tex. App.—Amarillo Aug. 1, 2013, no pet.) (mem. op.) ("A factfinder may consider several factors in finding evidence demonstrated a parent's inability to provide the child with a safe environment, including the parent's participation or lack thereof in services, lack of steady housing and employment, and missed opportunities for counseling and a psychological evaluation."); *see J.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00161-CV, 2012 WL 2476790, at *6 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.); *In re N.R.T.*, 338 S.W.3d 667, 674-75 (Tex. App.—Amarillo 2011, no pet.); *M.C. v. Texas Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 310 (Tex. App.—El Paso 2009, pet. denied); *In re M.R.J.M.*, 280 S.W.3d 494, 506 (Tex. App.—Fort Worth 2009, no pet.). We overrule A.K.'s first issue on appeal.

Further, sufficient evidence also supports a determination that termination was proper under section 161.001(1)(O). *See* Tex. Fam. Code § 161.001(1)(O) (termination proper if parent fails to comply with court order setting out requirements for regaining custody of child who was in Department's care for at least nine months and was removed for abuse or neglect).

A.K. cannot dispute that she did not comply with the court order setting out requirements for her to regain custody. And, although she argues that the children were not removed for neglect or abuse, this contention is essentially based on her testimony that she left diapers for her children when she left them with Jessica. That assertion was disputed by the Department's evidence, which was that A.K. promised to provide diapers, clothing, food, and money to care for the children;

8

failed to do so; and then, when she was contacted by Jessica and the Department, said that she would not be back for several days. *See J.P.B.*, 180 S.W.3d at 573 (defer to fact-finder's credibility decisions). Further, there was an open neglect allegation pending at the time of removal, and A.K. apparently only knew Jessica for a short time before asking her to care for her young children for several days. The evidence is sufficient to support a determination that the children were removed due to neglect. *See In re E.C.R.*, 402 S.W.3d 239, 246-48 (Tex. 2013); *In re D.E.*, 761 S.W.2d 596, 600 (Tex. App.—Fort Worth 1988, no writ). We overrule A.K.'s second issue.

Finally, A.K. asserts that the evidence is insufficient to show that termination was in the children's best interest. However, Salazar testified that she believed it was in the children's best interest for A.K.'s parental rights to be terminated because she had not made efforts to regain custody or to be a competent parent, the girls were responding well in their foster home, and the foster parents were prepared to adopt them if their parents' rights were terminated. Similarly, Rothas believed that termination was in the children's best interest, explaining the children's progress after being removed and placed into their foster-to-adopt home. The documents filed in the trial court stated that when they were removed, the children were developmentally delayed and non-verbal; an open case related to physical neglect was pending at the time of removal; and both girls had diaper rash and noticeable bruises on their legs. The earliest status report stated that the children had "significant developmental delays" and had been referred for speech and occupational therapy, while the latest report stated that they were working on toilet training, that their developmental delays were being addressed, and that they have bonded with and responded well to their foster family.

9

A.K. herself testified that she did not think the children would recognize her after nine months, and she never took a psychological exam or parenting classes, missed required drug tests, never arranged for the Department to inspect her residence, and, until asking for additional time at trial, generally seemed disinterested in showing that she had adequate parenting abilities or the means to satisfy the children's emotional and physical needs. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (non-exhaustive list of factors to consider when evaluating best interest: child's wishes, emotional and physical needs of child, emotional and physical danger to child, parenting abilities of individuals seeking custody, programs available to assist those individuals, competing plans for child, stability of home, parent's actions shedding light on parent-child relationship, any excuses for parent's actions). Thus, the trial court could have formed a firm belief or conviction that termination was in the children's best interest. *See id.* (Department need not prove all factors to show termination is in child's best interest); *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied) (discussing *Holley* factors and stating that "evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest"). We overrule A.K.'s third issue.

## Conclusion

Having overruled A.K.'s issues on appeal, we affirm the trial court's termination decree.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 21, 2014

11