

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-162-CV

IN THE INTEREST OF K.W. AND B.Y.,
CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Appellant Dusty C. appeals from the trial court's judgment terminating her parental rights to her minor children, K.W. and B.Y. Appellant argues two issues: (1) the court erred by finding additional grounds for termination after accepting her voluntary affidavits of relinquishment, and (2) there is insufficient

---

[1] *See* Tex. R. App. P. 47.4.

evidence to support the finding that the termination was in the children's best interest  We affirm.

## Factual and Procedural Background

Appellant has two children, K.W. and B.Y.  K.W. was born on March 2, 1998, and B.Y. was born on January 26, 1999.  Jeannie Maxey of the Texas Department of Family and Protective Services ("the Department") received a referral of neglectful supervision and physical abuse of the children.  The referral contained allegations that Appellant was living with a girlfriend, Ms. Patterson, whom Appellant allowed to discipline the children, leading to reports that the children received bruises from spankings.  Patterson has multiple personality disorder and exhibits nine different personalities.  There were concerns about those personalities' effect on the children, who have mental disorders as well.  Patterson also has a personal history of sexual abuse, and both Appellant and Maxey were concerned about Patterson being around the children and possibly acting out sexually.

In an April 2, 2007 interview with Maxey, Appellant admitted that she thought about giving up her children at their births and that she presently thought about giving them to someone else.  She mentioned that K.W. was having violent outbursts.  At that time, K.W. was living with one of Appellant's friends.  On May 21, the Department received another referral containing an

2

allegation of physical abuse of B.Y. by his maternal grandfather. Also in May 2007, K.W. was admitted to a mental health hospital, and B.Y. was admitted shortly thereafter.

On May 29, 2007, Appellant turned over custody of her children to the Department and stated she could no longer care for them. Because the children were in mental health hospitals at that time, they were not physically taken into the Department's care. The Department filed its petition for protection of the children, for conservatorship, and for termination on May 31, 2007, with counsel appointed to represent Appellant all on the same date. The Department was named temporary managing conservator on June 8, 2007.

On June 21, 2007, Appellant met with Department caseworker Katrina Mack to discuss her options, including relinquishing her parental rights. Mack conversed with Appellant and provided her with a conservatorship family service plan. Mack offered Appellant services including parenting classes, individual counseling, family counseling; the plan also required housing and random drug testing. Mack testified that Appellant told her that she did not want to perform the services and wanted to relinquish her parental rights. Mack confirmed at trial that Appellant signed the service plan and stated in the parent's comment section, "I would like to relinquish my parental rights."

On July 2, 2007, Appellant and her attorney met with Mack and an attorney ad litem and signed affidavits of relinquishment of parental rights for K.W. and B.Y. Mack testified that Appellant signed the documents with her attorney in the room and indicated to Mack that she signed them voluntarily.

At the termination trial on April 8, 2008, Appellant requested that the court invalidate her relinquishments. Despite this assertion, Appellant testified that she signed the relinquishments voluntarily. She stated that she was willing to take classes to learn to deal with the children's disorders; earlier in the trial, she had discussed some of the children's behavioral issues, including a poignant incident when she woke up to K.W.'s hands around her throat and K.W. saying that she "wanted to kill [her]." At the time of the hearing, Appellant had not completed any services suggested by the Department.

Appellant testified that she tried to contact Mack several times about seeing her children during the months before the trial but that Mack did not answer her phone or return the calls. When asked if she had made arrangements for both K.W. and B.Y.'s psychological counseling, in the event the court granted her custody, Appellant stated she had not.

After the bench trial, the trial court granted the Department's petition for termination. The trial court found that Appellant executed before the suit an unrevoked or irrevocable affidavit of relinquishment of parental rights as

4

provided by Chapter 161 of the Texas Family Code; knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical well-being of the children; engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and constructively abandoned the children. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (K), (N) (Vernon Supp. 2008). The trial court further found that termination was in the children's best interest. *Id*. § 161.001(2). The trial court terminated Appellant's parental rights and appointed the Department as K.W. and B.Y.'s permanent managing conservator.[2] Appellant filed a motion for new trial and statement of points on appeal. The trial court denied the motion for new trial and found that an appeal would not be frivolous.

---

[2] At the close of the case, the Department requested that B.Y.'s father's rights be terminated for constructive abandonment under section 161.001(1)(N) of the family code because he did not file an answer or appear. Since K.W.'s father was considered unknown until Appellant admitted it could be one of two men, the court permitted the Department to terminate the rights of the unknown father with the knowledge that the Department could file a new petition at a later time.

## Standard of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish at least one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2009).

### The State's Affidavits of Relinquishment
### and Alternate Statutory Grounds

In her first issue, Appellant argues the trial court should have based the termination on her relinquishment affidavits or on alternate statutory grounds, but not both. Appellant argues that the trial court caused harm to her by allowing the State to bring forth additional statutory grounds after proving that Appellant signed a voluntary relinquishment affidavit.[3]

Under section 161.001 of the Texas Family Code, a trial court can authorize a termination based on proof the parent committed any one of the prohibited acts in subdivision (1) and proof that termination of parental rights is in the child's best interest. Tex. Fam. Code Ann. § 161.001(1)–(2); *In re J.L.*, 163 S.W.3d at 84. The statute does not require the Department to elect between proceeding on the basis of voluntary relinquishment or proceeding on one of the other grounds listed in subdivision (1) of section 161.001. Tex. Fam. Code Ann. § 161.001(1). Also, there is no requirement in the statute and no case that holds that the trial court must, should, or may bifurcate the termination hearing procedure by first finding no valid voluntary affidavit of

---

[3] The State first argues that Appellant waived this issue, but she preserved error by listing this ground in her motion for new trial. *See* Tex. R. App. P. 33.1(a); *In re L.M.I.,* 119 S.W.3d 707, 710–12 (Tex. 2003) (holding appellant failed to preserve error when the issue with the relinquishment affidavits was not raised in any post-judgment motion), *cert. denied*, 541 U.S. 1043, 124 S. Ct. 2175 (2004).

relinquishment before considering other statutory grounds for termination. *See In re D.E.*, 761 S.W.2d 596, 600–01 (Tex. App.—Fort Worth 1988, no writ.) (holding that no precedent existed to allow the final termination hearing to be bifurcated between the alleged ground of termination and the best interest of the child analysis). Moreover, Appellant cannot completely remove evidence from the trial court's consideration as facts used in the best interest analysis often overlap with the statutory grounds; thus, evidence of endangering conduct and other predicate acts tend to emerge during the best interest analysis, regardless of the subdivision (1) grounds initially relied upon. *See In re S.K.A.*, 236 S.W.3d 875, 903 (Tex. App.—Texarkana 2007, pet. denied); *In re C.E.K.*, 214 S.W.3d 492, 503 (Tex. App.—Dallas 2006, no pet.) (stating that in some cases, the best interest of the child is infused with the statutory offensive behavior).

Appellant has cited no law to support the policy argument that the Department's proof of voluntary relinquishment ground should negate the trial court's ability to review the Department's additional grounds for termination before its subsequent best interest analysis. If the trial courts allowed this two-part inquiry, many parents who committed acts covered by other statutory grounds, such as endangerment, could avoid the repercussions of section 161.001(1)(D) and (E) by simply signing an affidavit of relinquishment before

9

their termination hearing.[4]  That policy has yet to be accepted by any Texas court.  We overrule Appellant's first issue.

## Legal and Factual Sufficiency: Best Interests of the Children

In her second issue, Appellant argues there was insufficient evidence to support the finding that the termination was in the children's best interest.

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  We must review all the evidence in the light most favorable to the finding and judgment.  *Id.*  This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  *Id.*  We must also disregard all evidence that a reasonable factfinder could have disbelieved.  *Id.*  We must consider, however, undisputed evidence even if it is contrary to the finding.  *Id.*  That is, we must consider evidence favorable to

---

[4] Under section 161.001(1)(M), a court may order termination if a parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." Tex. Fam. Code Ann. § 161.001(1)(M).  Because of ground (M) of the statute, the parent could lose parental rights to another child based on previous terminations based on (D) or (E).  *See id.*

termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a)

11

(Vernon 2002). There is also a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1)   the desires of the child;

(2)   the emotional and physical needs of the child now and in the future;

(3)   the emotional and physical danger to the child now and in the future;

(4)   the parental abilities of the individuals seeking custody;

(5)   the programs available to assist these individuals to promote the best interest of the child;

(6)   the plans for the child by these individuals or by the agency seeking custody;

(7)   the stability of the home or proposed placement;

(8)   the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)   any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just

12

one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* In addition to the *Holley* factors, the factfinder may also consider: a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct when looking at the child's best interest. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). We now address those factors for which relevant evidence was admitted; some factors are combined due to overlapping evidence.

**1. The emotional and physical needs of K.W. and B.Y. now and in the future, the plans for K.W. and B.Y. by the Department, and the stability of their proposed placement**

The evidence submitted at trial indicates that K.W. and B.Y. both have significant emotional needs and behavioral issues that Appellant did not appear prepared to handle at the time of the hearing. For instance, Mack testified that both of the children have post-traumatic stress disorder, bipolar tendencies, and attention-deficit hyperactivity disorder ("ADHD"). Additionally, she stated that K.W. has a severe case of attachment disorder.

Regarding behavioral issues, Appellant testified that both her children exhibit violent behaviors. She elaborated by recalling an incident where K.W.

13

banged her head against a bathroom door, causing a mirror to crash into B.Y., and another incident where K.W. choked Appellant while telling her that she wanted to kill her.

Despite her testimony regarding the children's substantial emotional needs and her inability to handle their behavior, at the time of trial Appellant had not made any arrangements for psychological help, counseling, or other services. Additionally, even though Appellant testified that she attended three or four parenting classes, she admitted that she did not complete the classes or any other parts of her service plan. Appellant did testify that she was willing to take classes to learn about her children's disorders; however, at the time of trial, she had not taken advantage of any services that had been offered to her.

By contrast, Mack testified that the Department's placement of K.W. and B.Y. at the time of trial provided the stability they needed to make progress with their behavioral and emotional needs. At the time of trial, K.W. was in a therapeutic foster home that was adoption-motivated. Although K.W. struggled academically because of her ADHD and other behavioral problems, she received assistance through a modified setting and schedule at school. B.Y. also received assistance for his behavioral issues and emotional needs through a residential treatment facility. Mack testified that he was showing signs of progress through his placement. Finally, Mack testified that both K.W. and B.Y.

14

were adoptable and that the Department's primary motivation was to keep the children together.

**2.      The present and future potential emotional and physical danger to K.W. and B.Y.**

Evidence at trial showed that Appellant has a history of using methamphetamine in the presence of K.W. and B.Y., an act that placed the children in a dangerous environment. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (stating that parental illegal drug use supports the conclusion that the children's surroundings endanger their physical and emotional well-being). Despite Appellant's bipolar diagnosis, she did not take medication and had not sought treatment from a mental health expert. This evidence also tended to show a potential emotional and physical danger to the children. *See In re K.A.S.*, 131 S.W.3d 215, 226 (Tex. App.—Fort Worth 2004, pet. denied) (discussing the emotional and physical danger of the mother's noncompliance in taking medications for her bipolar disorder).

Mack also testified about Patterson's presence as another potential danger to the children, due to her personality disorder and history of sexual abuse. At the time of trial, Appellant had only been employed for three weeks and was still living with and dependent on Patterson. *See In re D.S.*, 176 S.W.3d 873, 879 (Tex. App.—Fort Worth 2005, no pet.) (holding that evidence

of a parent's unstable lifestyle, including drug use and inability to provide a stable home, can support a factfinder's conclusion that termination is in the child's best interest), *superseded by statute on other grounds as recognized in In re D.A.R.*, 201 S.W.3d 229, 230–31 (Tex. App.—Fort Worth 2005, no pet.).

**3.  Parental abilities and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one**

The evidence at trial indicated that Appellant lacked significant parental abilities and that the relationship was not proper between Appellant and her two children. During an earlier investigation, Appellant told Maxey that she had thought about giving up both children for adoption when they were born. Appellant had a history of Department investigations.

Appellant voluntarily turned over custody of K.W. and B.Y. to the Department on May 30, 2007. Appellant then voluntarily executed irrevocable affidavits of relinquishment of parental rights on July 2, 2007. During the period between turning over custody in May 2007 to the time of trial in April 2008, Appellant did not contact anyone at the Department or inform them that she had changed her mind.

At trial, Appellant testified that she voluntarily signed two affidavits of relinquishment of parental rights with the assistance of counsel. She stated that during the meeting Appellant's attorney explained the documents she

16

would be signing and the rights she would be giving up as a result. Appellant stated at trial that she not only understood the rights she was giving up but also that the documents she was signing were both irrevocable and permanent. In fact, at trial, Appellant herself stated that she thought relinquishing her parental rights was "in the best interest" of K.W. and B.Y. when she signed the affidavits of relinquishment.

Evidence also shows that after signing the affidavits of relinquishment, Appellant had only seen K.W. and B.Y. on one occasion, a goodbye meeting that took place in July 2007. She had sent correspondence to the children and contacted the Department on three occasions to ensure the cards reached K.W. and B.Y. According to Mack, Appellant never contacted the Department to request a visit with the children. Mack testified that the first time she heard that Appellant had expressed second thoughts about relinquishing her parental rights was at the termination trial in April 2008.

At trial, Mack testified that Appellant had not provided K.W. and B.Y. with a stable environment. Mack stated that the Appellant moved the children around a lot and assigned several of her numerous partners the job of disciplining the children. One of Appellant's partners physically abused the children, causing bruising. And the Department ruled that there was "reason to believe" Appellant was not protective of her children after she allowed her

17

current partner, Patterson, to discipline K.W. and B.Y. by spanking them, bruising them, and leaving marks on them. The Department also found "reason to believe" in the case alleging abuse of B.Y. by his maternal grandfather during a visit in 2006. Ample evidence supported the conclusions that Appellant lacks parental abilities and Appellant's acts and omissions indicated her relationship with K.W. and B.Y. was not a proper relationship.

**4.    Excuses for the acts or omissions of Appellant**

Appellant admitted that she knowingly and voluntarily signed irrevocable affidavits relinquishing her parental rights, but she testified that she wanted her children back. She testified she would take classes to learn to deal with their disorders and that she had been reading about the children's diagnoses. Despite this assertion, Appellant failed to complete any of the services provided for her by the Department up to the time of trial. Appellant testified that she tried to call the Department to schedule visitation with K.W. and B.Y. but she could not remember the dates she tried to call and did not leave messages each time she called.

Considering all the evidence relevant to the *Holley* factors, we hold that a factfinder could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights as to K.W. and B.Y. is in their best interest. Accordingly, we hold that the evidence was legally sufficient. We

18

also hold, based on the entire record, that the evidence was factually sufficient to support the trial court's best interest finding.  Thus, we overrule Appellant's second issue.

**Conclusion**

Having overruled both of Appellant's issues, we affirm the trial court's termination order.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT and GARDNER, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  February 19, 2009